## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:16-cv-2486

SGS ACQUISITION COMPANY
LIMITED

       Plaintiff,

v.

DAVID LINSLEY, BERNARD
GUARNERA, NORTHERN ZINC,
LLC, and STAR MOUNTAIN
RESOURCES, INC.

       Defendants.

### PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff SGS Acquisition Company Limited files this Original Complaint against Defendants David Linsley, Bernard Guarnera, Northern Zinc, LLC, and Star Mountain Resources, Inc.; and respectfully shows as follows:

### I.
### PARTIES

1. Plaintiff SGS Acquisition Company Limited is a foreign corporation based out of Barbados.

2. Defendant David Linsley is an individual who, upon information and belief, resides in Colorado. Mr. Linsley is employed by Centurion Resource Group and may be served with citation at its principal place of business, 8400 East Prentice Avenue, Suite 1500, Englewood, Co 80111.

3. Defendant Bernard Guarnera is an individual who, upon information and belief, resides in Colorado. Mr. Guarnera is employed by Centurion Resource Group and may be served with citation at its principal place of business, 8400 East Prentice Avenue, Suite 1500, Englewood, Co 80111.

4. Defendant Northern Zinc, LLC may be served by serving the Colorado Secretary of State, Colorado Department of State, 1700 Broadway, Suite 200, Denver, Colorado 80290.

5. Defendant Star Mountain Resources, Inc. is a corporation registered to do business in the State of Colorado and may be served with process by serving its registered agent, Wayne Rich, 11074 Grayledge Circle, Highlands Ranch, Colorado 80130.

## II.
## JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) as there is complete diversity of citizenship among the parties to this suit and the amount in controversy exceeds $75,000.00, exclusive of interests and costs. The Court also has jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1367, in that it is a civil action arising under the laws of the United States and any state-law claims form part of the same case or controversy.

7. The Court has personal jurisdiction over Defendants because Defendants conduct business in Colorado, entered into relationships with Plaintiff in Colorado, and committed actions in Colorado that give rise to this cause of action. This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice. Damages sought are within the jurisdictional limits of this Court.

8. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims herein occurred in said District. Additionally, Defendants are doing business in said District.

## III.
## INTRODUCTION

9. Plaintiff SGS Acquisition Company Limited is a Barbados company and is engaged in the business of investing in operating companies worldwide, including metal and mining projects in the United States.

10. Defendant David Linsley is an individual residing in Colorado and engaged in business in Colorado for the purposes of private equity management. Mr. Linsley is a managing principal and portfolio manager at Centurion Resource Group in Englewood, Colorado. Mr. Linsley is also a partner in Northern Zinc, LLC.

11. Defendant Bernard Guarnera is an individual residing in Colorado and Nevada and is engaged in business in Colorado for the purposes of mining and engineering consulting as well as private equity investment in mining. Mr. Guarnera is a Partner at Centurion Resource Group in Englewood, Colorado. Mr. Guarnera is also a partner in Northern Zinc, LLC.

12. Defendant Northern Zinc, LLC is a Nevada limited liability company engaged in business in Colorado for the acquisition of mining rights, properties, assets, and associated interests.

13. Defendant Star Mountain Resources, Inc. is a Nevada corporation engaged in business in Colorado for the acquisition of mining rights, properties, assets, and associated interests. Defendant Star Mountain Resources, Inc. acquired Northern Zinc, LLC. Northern Zinc, LLC is now a wholly owned subsidiary of Star Mountain Resources, Inc.

## IV.
## FACTUAL BACKGROUND

14. The foregoing paragraphs are incorporated herein as if set forth in full.

15. On or around the spring of 2014, SGS Acquisition Company Limited, a Barbados company, ("SGS") entered into a business relationship with David Linsley ("Linsley") and Bernard Guarnera ("Guarnera") at Centurion Private Equity Partners ("Centurion") for the sole purpose of purchasing the Balmat mine from Hudbay Minerals ("Hudbay").

16. SGS retained the services of Linsley and Guarnera in order to pursue financing to purchase the Balmat mine. Linsley and Guarnera were to assist SGS in obtaining the necessary financing to close the acquisition of the mine.

17. Guarnera is a mining consultant. Linsley and Guarnera are partners and principals at Centurion. SGS was going to purchase the mine with private equity from Centurion. The sole purpose of the business relationship between SGS and Defendants Linsley and Guarnera was so that SGS could perform due diligence and eventually purchase the Balmat mine.

18. SGS brought the mining deal to Linsley and Guarnera. Prior to communications and confidential information exchanged with SGS, Defendants had no knowledge that Hudbay would sell the mine or that a deal was available.

19. SGS, Linsley, and Guarnera ultimately agreed on the price. SGS and a representative of Linsley and Guarnera attended a mine site visit.

20. SGS drafted a Letter of Intent ("LOI") to purchase the Balmat mine on or about February 20, 2014. The LOI had an expiration date of 75 days following execution of the LOI.

21. The deal progressed past LOI. Following the agreement of the LOI, due diligence began. SGS incurred substantial costs as it completed due diligence and negotiations of the final purchase and sale agreement.

22. Further, SGS developed the mining concept and disclosed extensive confidential and proprietary information about the Balmat mine to Linsley and Guarnera. Specifically, Linsley and Guarnera attended a two-day site visit at Balmat. During this visit, Balmat management disclosed detailed confidential information.

23. Linsley and Guarnera gained access to this key information via SGS. Further, a full mine plan was discussed at these meetings. SGS also maintained a site with all confidential information, including mine plans, available by internet (referred to herein as "the data room"). Linsley and Guarnera were given access to the data room by SGS. Finally, Linsley and Guarnera gained access to the tax information for the key tax losses calculation and financial model from SGS.

24. Based on the assurances of Linsley and Guarnera that financing would not be an issue, SGS moved forward to closing.

25. However, during the due diligence phase, Linsley and Guarnera did not meet the commitment to SGS to procure financing for the acquisition. Specifically, Linsley and Guarnera did not provide the financing needed by SGS to complete the acquisition, and further, utilized confidential and trade secret information for personal benefit and gain.

26. In addition to Linsley and Guarnera's failures, Centurion began materially changing the funding terms such that there were larger payments due from SGS, and different payment schedules under the LOI.

27. Linsley and Guarnera simply stopped returning phone calls or emails, or participating in any way in furtherance of SGS's financing of the Balmat mine deal. Thus, during the 75-day term of the LOI, Linsley and Guarnera failed to cooperate in order to assist SGS with the acquisition of the mine as intended.

28. Once Centurion ceased returning phone calls and being involved, SGS attempted to find new capital with other high-equity funds. However, because of the long delay from Centurion, SGS reached the termination date of the LOI without the opportunity to procure the necessary funding.

29. Due to Linsley and Guarnera's actions, SGS was unable to complete the sale funding. As a result, the LOI was cancelled and SGS did not procure the Balmat Mine.

30. Northern Zinc, LLC acquired the Balmat Holding Corporation, including the St. Lawrence Zinc Company and its mining operations in the Balmat mine. Northern Zinc now holds a 100% ownership interest in Balmat Holdings, a Delaware corporation, with SLZ, a Delaware limited liability company, being a direct and wholly owned subsidiary of Balmat Holdings. SLZ, in-turn, is the sole owner of the Balmat zinc mine and milling complex located in upstate New York.

31. On November 2, 2015, Star Mountain Resources, Inc. entered into three-way definitive agreements with Northern Zinc, LLC ("Northern Zinc") and Hudbay Minerals, Inc. ("Hudbay") that resulted in the Company acquiring Northern Zinc, Balmat Holding Corporation ("Balmat Holdings") and St. Lawrence Zinc Company, LLC ("SLZ"), including SLZ's wholly owned interest in the Balmat mining and milling operations located in St. Lawrence County, New York (the "Balmat Mine").

32. The total acquisition price paid for Balmat was 550 shares of Star Mountain common stock, $17,000,000 in consideration of NSR (net smelter royalty), consisting of $1,000,000 in cash at closing and future payments of $15.5 million. Eventually, $500,000 payment was made up front to Hudbay.

33. In addition, Star Mountain issued to the owner of Northern Zinc 10,000,000 shares of Star Mountain's unregistered common stock or equivalent cash/other valuable consideration, and assumed $1.39 million in debts from Northern Zinc as part of the overall acquisition of Balmat.

34. According to an 8-k filed for Star Mountain Resources, Inc. on October 30, 2015, David Linsley is a principal of Northern Zinc, LLC.

35. Upon information and belief, Bernard Guarnera was the consultant on the deal and was David Linsley's partner in procuring the Balmat Mine for Northern Zinc, LLC, and completing the sale to Star Mountain Resources, Inc. Guarnera is also listed as a manager for Northern Zinc, LLC.

36. SGS came up with the original mining concept. Star Mountain Resources, Inc., Northern Zinc, LLC, Linsley, and Guarnera previously had no relationship with Hudbay Minerals, nor were they aware that the Balmat mine was available for sale. Furthermore, reserves at the north and south ends of the Balmat mine were not being mined properly, and SGS developed the concept and plan to mine these reserves. SGS communicated this information to Linsley and Guarnera. Linsley and Guarnera stole the structure of the deal from SGS, as well as the mining concept.

37. Linsley and Guarnera used information vis-à-vis Centurion to ultimately take over the acquisition of the Balmat mine at the expense of SGS.

38. Star Mountain Resources, Inc. and Northern Zinc, LLC, via Linsley and Guarnera, used confidential and proprietary trade secret information acquired by improper means to accomplish the deal.

39. SGS has been damaged by Linsley and Guarnera and their company, Northern Zinc, LLC, as well as Northern Zinc's parent company, Star Mountain Resources, Inc. in an amount to be determined at trial.

## V.
## CAUSES OF ACTION

### Count I
### Intentional Interference With Prospective Business Advantage

40. The foregoing paragraphs are incorporated herein as if set forth in full.

41. Defendants were aware of the relationship between SGS and Hudbay regarding the Balmat mine purchase. Defendants knew or reasonably should have known of SGS's LOI.

42. Defendants' conduct intentionally and improperly interfered with SGS's acquisition of the Balmat mine, ultimately preventing formation of a sale contract. Defendants' conduct intentionally and improperly interfered with the LOI to purchase the Balmat mine.

43. Defendants' intentional and improper interference resulted in damages to SGS.

### Count II
### Tortious Interference

44. The foregoing paragraphs are incorporated herein as if set forth in full.

45. SGS signed a Letter of Intent (LOI) to purchase the Balmat mine on February 20, 2016.

46. Defendants' conduct intentionally interfered with SGS's LOI and with the continued acquisition and intended purchase of the Balmat mine. Defendants' conduct was intentional and improper.

47. Furthermore, Defendants intended to interfere with SGS's LOI and intended to interfere with SGS's purchase of the Balmat mine so that Defendants could procure the mine. Defendants' conduct was intended to affect the LOI that SGS entered into.

48. As a result of Defendants' conduct, SGS suffered substantial damages.

### Count III
### Linsley and Guarnera's Breach of Fiduciary Duty

49. The foregoing paragraphs are incorporated herein as if set forth in full.

50. Linsley and Guarnera were engaged in a business relationship with SGS for purposes of procuring financing on SGS's behalf for purposes of SGS's purchase of the Balmat mine.

51. Linsley and Guarnera had fiduciary obligations to SGS via their role in procuring financing for the Balmat mine on behalf of SGS.

52. After the expiration of SGS's LOI term, Linsley and Guarnera continued to owe SGS a duty of loyalty to safeguard and return SGS's trade secrets, confidential and proprietary information and business prospects.

53. Linsley and Guarnera failed to keep confidential SGS's trade secrets and confidential and proprietary information. Further, Linsley and Guarnera used this information for personal benefit, in violation of their fiduciary duty of loyalty to SGS.

54. Linsley and Guarnera are responsible for breaches of their fiduciary duties in the handling of confidential information and by not returning such trade secrets and confidential and proprietary information.

55. Linsley and Guarnera's dissemination and/or use of confidential information obtained from SGS for their own personal gain or for Northern Zinc, LLC's gain constitutes a breach of fiduciary duty.

56.   SGS incurred substantial monetary loss as a direct result of Linsley's and Guarnera's breaches of fiduciary duty to SGS.

57.   Linsley and Guarnera's actions were attended by willful and wanton conduct.

## Count IV
## Misappropriation of Trade Secrets

58.   The foregoing paragraphs are incorporated herein as if set forth in full.

59.   Upon information and belief, in an apparent effort to take business from SGS for their own personal benefit, Linsley and Guarnera took confidential and proprietary information belonging to SGS, which SGS believes included its financial information, prospective business opportunities, mining concept, deal or acquisition plan and structure, and LOI.  Northern Zinc and Star Mountain Resources, Inc. used the confidential and proprietary information and/or trade secrets of SGS, acquired by improper means, without notice.

60.   These items wrongfully taken by Linsley and Guarnera and utilized by Northern Zinc and Star Mountain Resources, Inc.  are protected trade secrets of SGS pursuant to C.R.S. § 7-74-102(4).

61.   SGS did not authorize, or expressly or impliedly consent to Linsley, Guarnera, Northern Zinc, or Star Mountain Resources, Inc.'s possession or use of SGS's trade secrets and confidential information for their own benefit.

62.   Defendants used improper means to acquire SGS's trade secrets for their own benefit.

63.   SGS is damaged by Defendants' misappropriation of its trade secrets.

64.   Upon information and belief, Defendants have been unjustly enriched by their misappropriation of SGS's trade secrets.

65. Linsley and Guarnera's misappropriation of SGS's trade secrets was attended by circumstances of fraud, malice, or a willful and wanton disregard of SGS's rights.

### Count V
### Linsley and Guarnera's Misappropriation of Business Value

66. The foregoing paragraphs are incorporated herein as if set forth in full.

67. In the apparent effort to take business from SGS for their own personal benefit, Linsley and Guarnera obtained information and materials that were the product of SGS's labor, skill and money.

68. SGS did not authorize, or expressly or impliedly consent to Linsley or Guarnera's possession or use of such information and materials for their own benefit.

69. Linsley and Guarnera's appropriation of SGS's business values was wrongful.

70. SGS was damaged by Linsley and Guarnera's misappropriation of its business values.

71. Upon information and belief, Linsley and Guarnera have been unjustly enriched by their misappropriation of SGS's business values.

72. Linsley and Guarnera's misappropriation of SGS's business values was attended by circumstances of fraud, malice, and willful and wanton conduct.

### VI.
### JURY DEMAND

73. Plaintiff respectfully demands a jury.

### VII.
### PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff SGS Acquisition Company Limited hereby respectfully requests that the Court enter judgment in SGS's favor on all of its claims for relief, and award SGS compensatory damages in its favor in an amount to be proven at

trial, including pre- and post-judgment interest, costs, and reasonable attorney's fees; and grant SGS such other and further relief as the Court deems just and proper.

      Respectfully submitted,

BY:    */s/ Timothy M. Dortch*

**TIMOTHY M. DORTCH**
State Bar No. 24044981
Micah.Dortch@cooperscully.com

**COOPER & SCULLY, P.C.**
900 Jackson Street, Suite 100
Dallas, Texas 75202
Telephone:  (214) 712-9500
Facsimile:  (214) 712-9540

**ATTORNEY IN CHARGE FOR PLAINTIFF**